DECISION
This is a property tax value appeal that came on for trial October 15, 2008, in which Plaintiff appeared on her own behalf, and Defendant was represented by Bob Schafer, Appraiser, and Dennis Wardwell, Appraisal Supervisor, Multnomah County Assessor's office.
 I. STATEMENT OF FACTS
The subject property is a three bedroom, one bath, 1,435 square foot home, built in 1909 and situated on a small lot (2,662 square feet) on NE 7th Street in Portland, with a 726 square foot unfinished basement. It is identified as Account R101786. Plaintiff bought the property in 2002 for $135,000. The home had previously been used as a rental and suffered from serious deferred maintenance. Among the problems was a leaky roof, leaky plumbing in the upstairs bathroom that damaged the ceiling of the kitchen below, stained wooden floors, and damaged and missing interior doors. The home also needed interior paint. Plaintiff, at first, did not live in the home, but stayed at her boyfriend's house around the corner. According to her testimony, Plaintiff did not focus on living in the house until 2006.
After her purchase, Plaintiff worked on her home over the course of several years before officially moving in. She replaced the old oil furnace with a gas furnace in 2003 because the oil furnace quit working. That change required Plaintiff to have a gas line brought to the home from *Page 2 
the street. In the years following, Plaintiff removed the bathtub to have the plumbing repaired, and replaced the toilet and cracked sink in the bathroom. She also added an electrical outlet and a light over the vanity in the bathroom. Plaintiff installed a larger sink in the kitchen, along with a garbage disposal, added a dishwasher (which the home did not previously have), removed some cabinetry to make room for the refrigerator (which was moved from another location in the kitchen), tiled the kitchen counters (over the existing counter surface), refinished the fir floors, and painted some of the interior walls. In 2006, Plaintiff painted the exterior of the house.[1] Plaintiff hired a plumber and an electrician to perform the plumbing and electrical work, but did the rest of the work herself with the help of her former boyfriend. According to Plaintiff, her out-of-pocket repair costs totaled $8,206, plus between $1,200 and $1,500 for the new furnace. Plaintiff submitted receipts for some of that work.
Defendant added $132,670 of "exception real market value" to account for the improvements Plaintiff made to the home, having determined that the home's condition went from "fair" to "average plus." The total real market value (RMV) was increased from $196,530 in tax year 2006-07 to $366,060 in 2007-08. (Ptf s Ex D2.) Defendant increased Plaintiffs maximum assessed value (MAV) and assessed value (AV) from $71,830 to $142,420. (Id.)
Plaintiff appealed to the county board of property tax appeals (board) and the board reduced the total RMV to $344,640, a reduction of $21,420. The board also reduced Plaintiffs exception RMV from $132,670 to $76,970, and her MAV and AV from $142,420 to $113,690. (Ptf s Ex D 2.) Plaintiff appealed the board's decision to this court, asserting that the RMV should be further reduced (from the amount determined by the board) to $217,550, and that there should be no exception RMV. Plaintiff seeks an AV of no more than $73,984.90, which *Page 3 
represents a three percent increase over the prior year. (Ptf s Ltr at 4, Sept 30, 2008.) Defendant disagrees, and has requested that the court sustain the board's values.
Plaintiffs appeal to this court was not timely filed from the mailing date of the board's order. However, Plaintiff has alleged an error in value (RMV) in excess of 20 percent, and the court issued an order July 17, 2008, allowing the case to go forward under ORS 305.288(1) (2007).[2]
 II. ANALYSIS
There are two issues in this case: 1) What is the RMV of Plaintiff s property as of January 1, 2007 (2007-08 tax year)? and 2) Can the value, if any, that Plaintiff added to her home by the work she did from 2002 through 2006 be added to Plaintiffs MAV as an exception to the standard three percent annual increase?
A. Overview of Applicable Law
The issues in this case are best understood within the framework of Oregon's somewhat unique property tax system. To begin with, AV is the lesser of MAV or RMV. ORS 308.146(2). MAV was established in 1997 as 90 percent of the property's RMV on the tax rolls for the 1995-96 tax year. Or Const, Art XI, § 11(1)(a). For each successive year, MAV will generally rise no more than three percent. Or Const, Art XI, § 11(1)(b);see also ORS 308.146(1). RMV is the likely selling price of the property on the assessment date, in an arm's-length transaction between equally motivated and knowledgeable parties, absent any duress. See generally ORS308.205.
Exceptions to the general three percent increase in a property's MAV exist, and the value attributable to those exceptions is often referred to as "exception value." If there is "new *Page 4 
property or new improvements to property," the MAV may increase by more than the allowable three percent. ORS 308.146(3)(a).[3] In that instance, MAV is calculated by adding together 103 percent of the property's prior year MAV to the product of the RMV of the new improvements "multiplied by the ratio * * * of the average maximum assessed value over the average real market value for the assessment year." ORS 308.153(1). Not all work that a person does to his or her home can be added as exception value. Limitations are found in both the statutes and administrative rules, as explained more fully below.
B. The Property's RMV
The first issue is the total RMV of Plaintiff's property. The board set the RMV at $344,640, with $109,000 allocated to the land and $235,640 to the improvement (the home). Plaintiff requests an RMV of $217,550, and Defendant requests that the court sustain the board's value, although for trial, Defendant estimated the value at $370,000 (slightly more than $25,000 above the roll value).
The statutory definition of RMV is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205.
In support of her value, Plaintiff submitted a broker's opinion of value dated August 22, 2008, which estimates the value of Plaintiff's home "as of January 2007 to be somewhere between $225k $260k based on properties for sale in the same condition in the neighborhood of Boise-Elliot." (Johnson Ltr, Aug 22, 2008.) That letter goes on to explain the reasons for the *Page 5 
value range estimate, including that the home needed a new roof in January 2007, had a "sub par lot size," no landscaping, an unusually small garage (too small for a Honda Accord), missing doors on bedroom closets, an unfinished back porch, and stains on the refinished wood floors. (Id.)
Plaintiff also submitted photographs of other homes in her area, and information on the sale of a nearby home in August 2008 for $160,000. Plaintiff argues that the houses in her neighborhood are "junky." Defendant insists that particular sale at $160,000 was a "distressed" sale with an impending foreclosure, and that it was on the market at the time of trial for $310,000.
For its part, Defendant submitted a value estimate based on three assertedly comparable properties, which, as adjusted by the county appraiser, provide a value estimate of $370,000. Plaintiff insists that the sales are not comparable, in part because they have larger lots and are on less busy streets. Two of the three homes are, indeed, on significantly larger lots, a fact for which Defendant has made no adjustment. Additionally, two of the three sales occurred after the assessment date and there is insufficient information on market conditions between the applicable assessment date and the date of those sales to know whether a "time" adjustment is warranted.
The goal in an RMV dispute is to determine the market value of the property; i.e., likely selling price. In that exercise, the court looks for "arm's length sale transactions of property similar in size, quality, age and location" to the subject property. Richardson v.Clackamas County Assessor, TC-MD No 020869D, WL 21263620 *3 (Mar 26, 2003). Raw, unrefined sales information is not enough. In evaluating the parties' competing evidence, the court looks to the *Page 6 
comparability of the different sales and the application of all necessary and appropriate adjustments for differences. According to The Appraisalof Real Estate:
 "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences."
Appraisal Institute, The Appraisal of Real Estate 307 (13th ed 2008.)
Plaintiff presents limited sales, none of which are adjusted for differences. Plaintiff's broker's opinion of value is unpersuasive because it does not adequately explain the basis for the estimated value range of between $225,000 and $260,000. Defendant presents adjusted market transactions which tend to support the current tax roll value (RMV). Nonetheless, as indicated above, certain necessary adjustments do appear to be missing from Defendant's sales grid. That fact is not too critical, however, because Plaintiff has the burden of proof and Defendant is not seeking an increase.
ORS 305.427 (2007) provides:
 "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation." (Emphasis added.)
Plaintiff is the party seeking affirmative relief and therefore has the burden of proof. By statute, she must establish her case by a "preponderance of the evidence." "`Preponderance' derives from the Latin word `praeponderare,' which translates to `outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence." Riley Hill General Contractorv. Tandy Corp., 303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "p]reponderance of the evidence means the greater weight of evidence, *Page 7 
the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312
(1971). Plaintiff has failed to establish by the "greater weight" or "more convincing evidence" that the board's value is in error. On the evidence before it, the court finds that the board's RMV of $344,640 should therefore be sustained. Accordingly, the RMV of the subject property as of January 1, 2007, was $344,640.
C. Did Plaintiff's work add value to her home ?
Plaintiff admits to doing a considerable amount of work to her home from 2003 through 2006. She reports spending between $9,400 and $9,900 for materials and some professional services. Plaintiff also testified that she and her former boyfriend performed a considerable amount of the labor, including removing cabinets, sanding and refinishing the wood floors, painting the interior walls, and installing a new kitchen sink and dishwasher. When questioned on cross-examination, Plaintiff testified that she had no opinion as to the value added to her home by the work she did. Nor was Plaintiff able to estimate the cost or value of her boyfriend's labor. Plaintiff did not submit any documentary evidence pertaining to the value added to her home. Nonetheless, Plaintiff contends she added no value, because the work done was routine maintenance.
Plaintiff has presented virtually no value evidence regarding the work she did to her home. The board determined that Plaintiffs work added $76,970 of "exception" value (see below) to Plaintiffs home, which is considerably less than the assessor's original estimate of $132,670.[4]
There is no evidence before the court as to whether the board considered all of the work to constitute exception value, or whether it determined that some of the work constituted general ongoing maintenance and repairs, items which do not fall in the category of exception *Page 8 
value, as explained more fully below. However, because there is no reliable evidence to controvert the board's determination, the court concludes that Plaintiffs work did add value.
D. Can the value be added to Plaintiff's MAV as an exception to thestandard three percent annual increase?
In May 1997, Oregon voters passed by referendum Measure 50 (M50), which substantially modified the state's property tax system. Prior to M50, a property was taxed at its RMV. Due to increasing values, Oregon voters chose to limit the growth of assessed values. In doing so, M50 created the concept of MAV. For the 1997-98 tax year, which was the implementation year for M50, the MAV was calculated as 90 percent of the property's 1995-96 RMV (back two years less 10 percent). Or Const, Art XI, § 11(1)(a). M50 provides that, for each successive year, the MAV will generally increase no more than three percent. Or Const, Art XI, § 11(1)(b); see also ORS 308.146(1).[5]
Exceptions to the general three percent limit on annual increases to a property's MAV exist, and the value attributable to those exceptions is often referred to as "exception value." If there is "new property or new improvements to property," the MAV may increase by more than the allowable three percent. ORS 308.146(3)(a).
ORS 308.149(5) provides, in part, the following definition of new property:
 "(a) `New property or new improvements' means changes in the value of property as the result of:
 "(A) New construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property[.]" *Page 9 
The Oregon Department of Revenue (department) has promulgated an administrative rule defining those terms. See OAR 150-308.149-(A)(1). The rule provides in relevant part as follows:
 "(1) For purposes of ORS 308.149:
 "(a) `New construction' means any new structure, building, addition or improvement to the land, including site development.
 "(b) `Reconstruction' means to rebuild or replace an existing structure with one of comparable utility.
 "(c) `Major addition' means an addition that has a real market value over $10,000 and adds square footage to an existing structure.
 "(d) `Remodeling' means a type of renovation that changes the basic plan, form or style of the property.
 "(e) `Renovation' means the process by which older structures or historic buildings are modernized, remodeled or restored.
 "(f) `Rehabilitation' means to restore to a former condition without changing the basic plan, form or style of the structure."
OAR 150-308.149-(A)(1).
Certain changes to property such as "[g]eneral ongoing maintenance and repair" and "[m]inor construction" are statutorily excluded from the definition of "new property or new improvements" to property, and cannot be used to increase a property's MAV. ORS 308.149(5)(b);[6] Magno v.Dept. of Rev., 19 OTR 51, 63 (2006). The department's rule defines those terms as follows: *Page 10 
 "(2)(a) For purposes of ORS 308.149 `general ongoing maintenance and repair' means activity that:
 "(A) Preserves the condition of existing improvements without significantly changing design or materials and achieves an average useful life that is typical of the type and quality so the property continues to perform and function efficiently;
 "(B) Does not create new structures, additions to existing real property improvements or replacement of real or personal property machinery and equipment;
 "(C) Does not affect a sufficient portion of the improvements to qualify as new construction, reconstruction, major additions, remodeling, renovation or rehabilitation; and
 "(D) For income producing properties is part of a regularly scheduled maintenance program.
 "(b) Regardless of cost, the value of general ongoing maintenance and repairs may not be included as additions for the calculation of maximum assessed value."
OAR 150-308.149-(A)(2).
Based on those definitions, the court finds that certain of Plaintiff s work constitutes new property or new improvements to property, the value of which can be added to her MAV, provided it meets the value threshold, and that other work constitutes general ongoing maintenance and repair, and cannot be added to Plaintiffs MAV.
The court finds that the following work comes within the definition of new property or new improvements to property as "renovation" or "rehabilitation": the new gas furnace and the gas line for that furnace installed in 2003, and an additional gas line to the kitchen for the gas stove installed in 2006; the addition of a garbage disposal and dishwasher in 2006; the removal of some cabinets in 2006 to allow for the relocation of the refrigerator; new tile counters; and, the new electrical outlet in the bathroom in 2006. As can be seen, the majority of that work took place in 2006, and the value must exceed the $10,000 statutory value threshold in that year, or *Page 11 
$25,000 in the five-year period ending December 31, 2006. Otherwise, it constitutes "minor construction" and cannot be added to Plaintiffs MAV as "exception value" because it is not new property or new improvements to property. ORS 308.149(5)(b) (excluding "[m]inor construction" from the definition of new property or new improvements); ORS 308.149(6) (defining "[m]inor construction" as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years.")
The uncontroverted testimony, although perhaps not as detailed as the court would like, was that the only work done before 2006 was the installation of a gas line and gas furnace, and perhaps some interior painting.
Plaintiff submitted receipts totaling approximately $7,000 for plumbing and electric work done in 2006, but other evidence and exhibits indicate Plaintiff spent between $9,400 and $9,900. (Ptf s Exs F, G, H; Ptf s Ltr at 3, Oct 2, 2008; Ptf s Compl at 3.) Some of the difference may relate to projects not considered exception value (i.e., ongoing maintenance and repair rather than new improvements to property). However, other work in this category (exception value) was performed by Plaintiff and her former boyfriend and there is no evidence on the value of their labor. Plaintiff insists she did not exceed the $10,000 limit, but she has insufficient evidence to prove that assertion. At the same time, Defendant has no evidence whatsoever on the exception value issue. On the evidence before it, the court concludes that the exception value found by the board of $76,970 must be sustained.
E. What is Plaintiff's MAV and AV?
There is no evidence before the court on the AV of Plaintiff s property. The board reduced the MAV and AV from $142,420 to $113,690. Although Plaintiff has requested the *Page 12 
standard three percent statutory increase over the prior year (2006-07), the court's finding that there was taxable exception value added to Plaintiffs home precludes the three percent statutory increase provided in ORS 308.146(1). On the evidence before it, the court finds that the board's MAV and AV should be sustained at $113,690.
 III. CONCLUSION
After carefully considering the evidence and applicable law, the court concludes that Plaintiff has failed to establish an error in the values of her property as found by the board. Accordingly, those values are sustained. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs RMV, as of January 1, 2007, was $344,640;
IT IS THE FURTHER DECISION OF THIS COURT that Plaintiffs exception RMV as of January 1, 2007, was $76,970; and
IT IS THE FURTHER DECISION OF THIS COURT that Plaintiffs MAV and AV as of January 1, 2007, was $113,690.
Dated this _____ day of February 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on February 3,2009. The Court filed and entered this document on February 3, 2009.
[1] More recently, Plaintiff either repaired or replaced her leaky roof. However, that work was done after the January 1, 2007, assessment date for the year currently under appeal and is not germane to the value issues presently before the court.
[2] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2005.
[3] ORS 308.146 provides in relevant part:
 "(3) Notwithstanding subsections (1) and (2) of this section [which provide the general definitions of maximum assessed and assessed value], the maximum assessed value and assessed value of property shall be determined as provided in ORS 308.149 to 308.166 if:
 (a) The property is new property or new improvements to property[.]"
[4] The value appearing on Plaintiffs 2007-08 property tax statement.
[5] The measure also requires counties to maintain a record of the property's RMV, because a property is to be taxed at the lesser of its MAV or its RMV. Or Const, Art XI, § 11(1)(f); see also ORS 308.146(2).
[6] ORS 308.149(5)(b) provides in relevant part:
 "`New property or new improvements' does not include changes in the value of the property as the result of:
 "(A) General ongoing maintenance and repair; or
 "(B) Minor construction." *Page 1